## In re SCHULTE RETAIL STORES CORPORATION.

District Court, S. D. New York.
March 27, 1937.

Reargument Denied May 18, 1937.

William A. Kirk, of New York City, for petitioner.

Jerome Eisner and Ernst, Gale, Bernays & Falk, all of New York City (Henry I. Fillman, of New York City, of counsel), for debtor.

KNOX, District Judge.

This is a proceeding on exceptions to a report of a special master. In 1920, D. A. Schulte, Inc., entered into a lease with George W. Walker, now deceased, covering certain premises at the southeast corner of Broadway and 104th street, New York City. A provision of the lease is as follows: "XVII.—if the said party of the second part, its successors or assigns shall at any time during the term hereby de-

mised or of the renewal term as herein provided, become insolvent, or if proceedings in bankruptcy shall be instituted by or against said party of the second part, its successors or assigns, or if it or they shall compound its or their debts or assign over its or their effects for payment thereof, or if any judgment be entered, or if any execution of judgment shall issue, or if any attachment be levied against it or them, or any of its or their effects whatsoever whereupon the said demised premises shall be taken or attempted to be taken or if a receiver shall be appointed of its or their property, and the said Tenant, its successors, or assigns, does not in the case of said proceedings in bankruptcy, or the appointment of such receiver or of the entry of such judgment, or the issue of such execution or attachment within ninety days thereafter, cause the same to be discontinued, discharged, removed or vacated, or bond the same it shall and may be lawful for the Landlord, his heirs or assigns, at his or their election into and upon the said demised premises or property or any part thereof, in the name of the whole to enter and the same to have, hold, repossess and enjoy as of his or their former estate, discharged from these presents and the demise intended to be hereby made as aforesaid, anything herein contained to the contrary thereof in any wise notwithstanding."

A substantial portion of the premises have been sublet by D. A. Schulte, Inc., at the same monthly rental which Schulte was required to pay the landlord.

On June 3, 1936, Schulte's petition under section 77B of the Bankruptcy Act, 11 U.S.C.A. § 207, was approved. The debtor, by order of this court entered June 30, 1936, was continued in possession. Since the filing of the petition, the debtor has continued to make payment to the landlord of an amount equal to the rent reserved under the lease. On October 1, 1936, the landlord moved for an order permitting it to prosecute dispossess proceedings against the tenant. The matter was referred to a special master and, in due course, he decided that debtor in the course of precipitating the proceedings in 77B had brought itself within the terms of paragraph XVII of the lease. He further decided that the landlord, by accepting the payments subsequent to June 3, and more particularly, the payments on September 3 and October 3, had waived the forfeiture privilege of paragraph XVII. The petitioners have appealed from the master's decision.

In his decision the master stated: "When all of the allegations of the petition are read together, it appears to me that the debtor admitted its inability to meet its debts in full as they mature. This is an admission of insolvency under the Law of the State of New York, although it is not insolvency in the bankruptcy sense. Upon the hearing I expressed the view that this is not the insolvency provided for in the above quoted provision of the lease. However, upon further deliberation I am constrained to hold that the provision giving rise to a forfeiture upon insolvency of the tenant does contemplate insolvency under the Law of the State of New York."

The debtor has not contested the master's conclusion on this point, and to that extent I am satisfied to accept his conclusion. However, I am unable to agree with his finding that the landlord waived its rights under the aforestated paragraph.

Waiver is a legal conclusion attached to a factual situation. Sometimes certain acts are deemed to result in a waiver of rights notwithstanding the mental reservations which may accompany such acts. In this case, petitioners, three months after the inception of these proceedings, could have declared the lease at an end and moved to oust the lessee; or they could have waived the breach and permitted the lease to continue. Having had three months in which to arrive at a decision as to the action to be taken in respect to the lease, and having determined to re-enter, and notwithstanding the institution of proceedings looking to that end, petitioners accepted a payment from the lessee that was equal to the rent for October. Such acceptance has generally been held, in relation to a breach giving the lessor the right to re-enter, to be a waiver of such right. See Woollard v. Schaffer Stores Company, 272 N.Y. 304, 5 N.E.2d 829, 109 A.L.R. 1262, and cases cited therein.

But the situation in which these parties then found themselves was complicated by the applicability thereto of their respective rights and obligations arising under the provisions of 77B of the Bankruptcy Act, 11 U.S.C.A. § 207. The debtor was entitled to a more or less indefinite period within which to apply to the court for an order affirming or rejecting the lease. Pending such application, the debtor had possession and use of the premises under the protective arm of the court. Whether the affirmation or rejection of the

lease should come about, pursuant to section 77B(c) (5) of the act, 11 U.S.C.A. § 207(c) (5), the estate of the debtor, in one form or another, would be liable for the use of the premises from the date on which the petition in reorganization was approved. If the lease were affirmed, the liability would be considered as one for rent; if the lease were rejected, the liability would be for use and occupancy, viz., the reasonable value of the use of the premises which, in turn, would probably be the rent specified in the lease. Irrespective of the legal characteristics of the liability, it would be recognized as an expense of reorganization and, as such, it would enjoy priority over claims that accrued prior to the inception of these proceedings.

█ The cases hold that the status of a debtor in possession is analogous to that of a receiver in equity. In re Avorn Dress Company, 2 Cir., 79 F.2d 337; In re Chase Commissary Corporation, D.C., 11 F.Supp. 288. In the latter case, Judge Patterson outlined the relationship of a lessor and a lessee under a lease existing upon the institution of an equity receivership and then proceeded to hold that the same outline applies to an estate in the course of reorganization under section 77B, whether in custody of a trustee or of the debtor itself.

█ In the light of Judge Patterson's decision, with which I am in accord, it seems both a logical and inevitable conclusion that the case falls within and is controlled by Model Dairy Company v. Foltis-Fischer, 2 Cir., 67 F.2d 704. In that case, as here, the receiver had not yet affirmed or rejected the lease; in that case, as here, certain payments were accepted by the landlord after the breach. True, the payments there were denominated for "use and occupancy," but a waiver of rights cannot be made to depend upon terminology alone. Until the affirmance of the lease upon the part of the debtor, the lessor was as much entitled to regard them as payments for use and occupation, as to look upon them as installments of rent. While, in a reorganization proceeding, the debtor must be given reasonable time and opportunity to put its house in order during its surcease from the demands of creditors, it must fairly requite the owner of the facilities upon which it depends for sustenance.

When property of a debtor is thus put to the use of a distressed debtor, and the price of its use is capable of being called either rent or a payment for use and occupation, it should not lie wholly within the power of the debtor to make choice of the denominating quality. The debtor is the agent of the court which is supposed to protect the creditors and other parties in interest as well as the debtor. Hence, I believe, in the absence of clear and convincing proof that the lessor intended to waive the breach in the lease, it should not be considered as having done so. The special master's report, to the extent indicated, is overruled and the petitioners' request is granted.

### On Motion for Reargument.

This motion for reargument urges that my decision was erroneous in two respects:

First, in assuming that the debtor conceded the correctness of the special master's conclusion that it has admitted "insolvency" within the law of New York; secondly, in disaffirming the master's ruling that the lessor has waived its privilege of invoking the forfeiture clause.

The order of reference, dated June 17, 1936, provides in part as follows: "(4) The Special Master shall report upon all matters brought before him, and each report shall contain a form of order recommended by the Special Master to be made upon such report. When the report of the Special Master is upon a contested matter, the Special Master shall file the original of such report with the Clerk of this Court and shall give notice of such filing to each party who shall have appeared at the hearing before the Special Master on the matter to which the report relates, and, unless within such time as the Special Master may in his discretion fix, written objections to such report shall be filed with the Clerk, and copies of such objections shall be served upon all parties who shall have appeared at the hearing before the Special Master on the matter to which such report relates, the report shall stand confirmed, and any party may submit to the Judge acting in these proceedings the report of the Special Master and the order recommended by the Special Master to be made and entered on such report. If timely objections to such report shall be filed and served as above provided, such further proceedings shall be had on such report and objections as the Judge acting in these proceedings shall direct."

In his report on the instant matter, the master made the following order: "I fix

ten days from the date hereof as the time within which written objections to this Report may be filed with the Clerk and copies of such objections served as required by the Order of Reference. If no objections are filed within the time fixed, I recommend that the proposed Order submitted herewith be signed. If timely objections to this Report shall be filed and served as required by the Order of Reference, such further proceedings shall be had upon this Report, and such objections as the Judge acting in these proceedings shall direct."

Despite these provisions, the debtor failed to except to that part of the master's report which was unfavorable to it, and on the motion to confirm urged no objections to the master's conclusion. In pursuance of Order 47 of General Orders in Bankruptcy, 11 U.S.C.A. following section 53, and of the order of reference of June 17, 1936, I accordingly accepted that portion of the report and reviewed only the rulings to which exceptions had been taken. The debtor not having obtained the decision desired on the lessor's exceptions, it now asks a review of the portion of the master's report which was adverse to its contentions. No excuse is offered for the failure to raise the objections now urged against the master's finding of insolvency on the part of the debtor and, in the absence of such excuse, it is doubtful if the objection should be regarded as having seasonably been made. However, the point is of importance to the debtor, and deserves disposition on grounds less technical. Hence, with an indulgence that may not again be exercised, I will consider the objections as properly made.

The pertinent paragraph of the lease is quoted in my previous memorandum.

The question is whether the debtor, by conceding its inability to pay and discharge its obligations as they mature, has admitted itself to be "insolvent" within the meaning of that term as it was used in the lease. That, I think, it has done. The forfeiture clause was carefully drawn and undoubtedly was intended to be inclusive of the variants of financial integrity which might render the debtor unable to meet its debts upon their maturity. The clause contemplated a forfeiture if lessee should become insolvent, or if proceedings in bankruptcy should be instituted, either by or against it. Obviously, the draughtsman of the lease did not intend that his alternatives should be construed as synonymous.

If the phrase "proceedings in bankruptcy" be interpreted strictly and most favorably to the debtor, we may assume that it pertained to the condition of liabilities exceeding assets. Hence, "insolvent" must be taken to apply to situations not precisely within the purview of a bankruptcy proceeding, as of the date of the lease, viz., 1920, and inability to meet obligations as they matured was just such a situation. Hence, I believe that the debtor has admitted insolvency within the forfeiture clause.

This conclusion is buttressed by the legal definitions of insolvency prevailing at the time the lease was drawn. The word has been most frequently interpreted in connection with section 15 of the Stock Corporation Law, Consol.Laws, c. 59. The term insolvency in that statute has always connoted inability to meet obligations as they mature. Brouwer v. Harbeck, 9 N.Y. 589; Abrams v. Manhattan Brewing Company, 142 App.Div. 392, 126 N.Y.S. 844; French v. Andrews, 81 Hun 272, 30 N.Y.S. 796, affirmed 145 N.Y. 441, 40 N.E. 214. General Corporation Law, Consol.Laws, c. 23, § 71, provides for dissolution, "where the corporation has remained insolvent for at least one year." This section, upon the rare occasions when it has been invoked, contemplates a failure to pay debts as they mature. People v. Troy Chemical Co., 118 App.Div. 437, 104 N.Y.S. 22. See, also, Denike v. New York Lime & Cement Company, 80 N.Y. 599. Another definition of insolvency is to be found in Personal Property Law, Consol.Laws, c. 41, § 156, subd. 3. The foregoing statutes are obviously not controlling in the instant case, since they are used in connection with special situations, but they serve to demonstrate the interpretations and meaning of the term "insolvency" existing at the time the lease was drawn. Furthermore, in the absence of statute, the term has come to mean inability to meet obligations as they mature. See Sterrett v. Third National Bank, 46 Hun 22, affirmed 122 N.Y. 659, 25 N.E. 913; Brown v. Montgomery, 20 N.Y. 287, 75 Am.Dec. 404. Debtor and Creditor Law, Consol.Laws, c. 12, § 271, upon which the debtor relies, was enacted in 1925, and has no bearing on the interpretation of a term in a lease made in 1920.

I conclude that the debtor has admitted it is "insolvent," as that term was used in the lease and in the light of its meaning under the law of New York. There is, therefore, no necessity for any further

argument on this point. Nor will further argument be heard on the question of lessor's waiver; that problem was considered in the original motion and nothing by way of addition to the previous argument has been proffered.

Motion denied.